**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x

AMJAD SAIYED, individually and on behalf of all others
similarly situated,

                         Plaintiff(s),

      -against-

ARCHON, INC., ARCHON DISTRIBUTION, INC., RASHID
PATEL, MOHAMMED ASHIF "MIKE" GAJRA, and
JOHN/JANE DOES "1" – "10"

                         Defendant(s).

-------------------------------------------------------------------------x

**VERIFIED
COMPLAINT**

Docket No.:

      The Plaintiff, AMJAD SAIYED ("Saiyed" or "Plaintiff"), on behalf of himself and a

class of similarly situated persons for whom he brings this action, complaining of the defendants,

ARCHON, INC., ARCHON DISTRIBUTION, INC., RASHID PATEL, MOHAMMED ASHIF

"MIKE" GAJRA, and JOHN/JANE DOES "1" – "10" (hereinafter collectively "Defendants"),

through his attorneys, Romano & Associates, respectfully alleges as follows:

## PARTIES

1. This is a class action brought by Plaintiff on behalf of himself and all those similarly

    situated for the failure of Defendants to pay Plaintiff and prospective class members for

    all hours worked, minimum wage, accrued overtime and spread-of-hours premium pay in

    a timely manner.  The action asserts claims under the Fair Labor Standards Act ("FLSA")

    29 USC 216(b) et seq., and the New York Labor Law ("NYLL").  Moreover, Plaintiff

    seeks damages for Defendants' violation of the requirements of the New York Wage

Theft Prevention Act and the Federal Trafficking Victims Protection Reauthorization Act.

2. Plaintiff Saiyed resides at 269 Chestnut Street, Apartment 107, Township of Nutley, County of Essex, State of New Jersey.

3. Upon information and belief, Defendant ARCHON, INC. is a corporation transacting business in the State of New York, with a principal place of business located at 159 Cathedral Avenue, Village of Hempstead, Town of Hempstead, County of Nassau, State of New York.

4. Upon information and belief, Defendant ARCHON DISTRIBUTION, INC. is incorporated under the law of the State of New Jersey, with a principal place of business located at 361 Franklin Avenue, Township of Nutley, County of Essex, State of New Jersey, with annual sales exceeding $11 million.

5. Upon information and belief, RASHID PATEL is domiciled at 316 Ropes Road, Englewood Cliffs, New Jersey, and the President and an owner of ARCHON DISTRIBUTION, INC. and/or ARCHON, INC.  He is in active control and management of Archon, regulates the employment of persons employed by Archon, acts directly and indirectly in the interest of Archon in relation to the employees, and is thus an employer of Plaintiff and the class under the Fair Labor Standards Act and New York State Labor Law.

6. Upon information and belief, MOHAMMED ASHIF "MIKE" GAJRA, also and/or formerly known as Mohamed Ashif Patel, is domiciled in Paramas, New Jersey, and an owner of ARCHON DISTRIBUTION, INC. and/or ARCHON, INC.  He is in active control and management of Archon, regulates the employment of persons employed by Archon, acts directly and indirectly in the interest of Archon in relation to the employees,

2

and is thus an employer of Plaintiff and the class under the Fair Labor Standards Act and New York State Labor Law.

7. Upon information and belief, Defendants JOHN/JANE DOES "1" – "10" are, *inter alia*, additional owners of Defendant ARCHON DISTRIBUTION, INC. and/or ARCHON, INC.

8. Upon information and belief, Defendants RASHID PATEL, MOHAMMED ASHIF "MIKE" GAJRA, and JOHN DOES "1" – "10" may, along with Defendant ARCHON DISTRIBUTION, INC. and/or ARCHON, INC., be held jointly and severally liable to Plaintiff and the class because they are among the ten largest shareholders of Defendant Archon pursuant to New York Business Corporation Law § 630.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' New York State law claims pursuant to 28 U.S.C. § 1367.

10. Upon information at belief, Defendant ARCHON DISTRIBUTION, INC. is a foreign corporation authorized to do business in the State of New York and is subject to personal jurisdiction in New York.

11. Venue is proper in the Eastern District of New York because Defendants conduct business in the Nassau County, and the acts and/or omissions giving rise to the claims herein allegedly took place in Nassau County.  Moreover, Defendant ARCHON, INC. is domiciled in this District.

## CLASS ACTION ALLEGATIONS

12. This is a class action brought on behalf of all persons (hereinafter collectively the "Class") which consists of:

    a. All persons currently or previously employed by Defendant Archon under nonimmigrant worker status (hereinafter collectively "H–1B Workers") whom were paid amounts totaling a yearly sum lesser than the amount Defendant Archon reported to United States Citizenship and Immigration Services, a division of the Department of Homeland Security ("USCIS").

    b. All persons currently or previously employed by Defendant Archon whom were coerced and/or forced to remain employed by Defendant Archon through means of illegal threats, in violation of the Trafficking Victims Protection Reauthorization Act of 2013 (18 U.S.C. §1589, 1595 *et sec.*) pursuant to, *inter alia*, the civil remedies and "Forced Labor" provisions therein.

13. This class action alleges employment law, immigration law, and human rights violations arising from a systemic scheme conceived, executed, and maintained by Defendant Archon to deprive the Class of funds owed to them through the illegal use of threats of deportation, extended unemployment imposed through unconscionably onerous "non-compete" agreements, and physical threats.

14. This action is brought pursuant to Federal Rule of Civil Procedure 23.  The Class satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

15. The members of the Class are so numerous and geographically diverse (some members having returned to their origin countries) that joinder of all Class members is impracticable.

16. Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and the other members of the Class sustained damages as a result of Defendant Archon's wrongful conduct complained of herein.

17. Plaintiff will fairly and adequately protect the interest of the Class and has retained counsel competent and experienced in complex litigation.

18. The class action is superior to other methods for the fair and efficient adjudication of this controversy.  Because of the vulnerable immigration status of individual members of the Class coupled with threats made by Defendants regarding their status, members may be unwilling or unaware of the ability to seek redress for the wrongful conduct alleged; additionally, the geographic diversity of the members makes it virtually impossible to seek redress for said wrongs without joinder of the Class.

19. Common question of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, as detailed in the

20. Notice has been provided to the Class by means of mailing, posting, and publication of a form of notice similar to those customarily used in other class action litigations.

21. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## FACTUAL ALLEGATIONS

**A.     Defendant Archon's Reported Figures to the United States Government Regarding the Plaintiff's Wages Vastly Over-report Plaintiff's Take-home Pay**

22. Plaintiff is from Vadodar, Gujarat India.  He learned of an employment opportunity with Defendant Archon when Defendant RASHID PATEL's brother told him of the

opportunity.  Plaintiff then began the process of applying to the USCIS, and moving his family to the United States.

23. On or about March 27, 2008, Defendant Archon's attorney, on behalf of Defendant Archon, submitted an I-129, Petition for a Nonimmigrant Worker ( "I-129"), to the USCIS representing to them that Plaintiff would be paid $48,006.00 per year.

24. On or about May 2, 2008, the USCIS approved Plaintiff's I-129, granting him an H-1B visa.

25. Plaintiff began his employment with Defendant Archon on or about January 6, 2009.

26. Plaintiff's W-2s from 2009 indicate that he was paid $28,500.00 for the year 2009.

27. Comparison of the I-129 figure to the W-2 figure yields a difference of $19,506.00 due and owing to Plaintiff from Defendant Archon for the year 2009.

28. Further, however, Defendants would consistently demand that Plaintiff return cash to Defendants when he received these – already reduced – paychecks, totaling $7,522.88 in 2009, yielding an actual take-home pay of $20,977.12 for 2009, leading to a total of $27,028.88 still due to Plaintiff.

29. Additionally, Defendants unlawfully forced Plaintiff to pay all fees associated with his USCIS application for 2009, totaling more than $3,500.00.

30. Pursuant to the I-129, Defendants represented to the USCIS that Plaintiff would be paid $48,006.00 for the year 2010.

31. Plaintiff's W-2s from 2010 indicate that he was paid $25,800.00 for the 2010 year.

32. Comparison of the I-129 figure to the W-2s yields a difference of $22,206.00 due and owing to Plaintiff from Defendant Archon for the year 2010.

33. On or about September 13, 2011, Defendants submitted a letter to the USCIS Regional Service Center in support of Plaintiff's I-129, representing to them that Plaintiff was now earning an annual salary of $48,800.00 per year, including for the 2011 ("2011 Letter").

34. Plaintiff's W-2s from 2011 indicate that he was paid $42,420.00 for the 2011 year.

35. Comparison of the I-129 figure to the W-2s yields a difference of $6,380.00 due and owing to Plaintiff from Defendant Archon for the year 2011.

36. Again, however, Defendants would consistently demand that Plaintiff return cash to Defendants when he received these – already reduced – paychecks, totaling $12,508.75 in 2011, yielding an actual take-home pay of $29,911.25 for 2011, leading to a total of $18,888.75 still due to Plaintiff.

37. Additionally, Defendants unlawfully forced Plaintiff to pay all fees associated with his USCIS application for 2011, totaling more than $3,500.00.

38. Defendants represented to the USCIS that Plaintiff was to earn an annual salary of $48,800.00 for the year 2012.

39. Plaintiff's W-2s from 2012 indicate that he was paid $42,500.00 for the 2012 year.

40. Comparison of the I-129 figure to the W-2s yields a difference of $6,300.00 due and owing to Plaintiff from Defendant Archon for the year 2012.

41. Yet again, however, Defendants would consistently demand that Plaintiff return cash to Defendants when he received these – already reduced – paychecks, totaling $6,952.18 in 2012, yielding an actual take-home pay of $35,547.82 for 2012, leading to a total of $13,252.18 still due to Plaintiff.

42. Defendants represented to the USCIS that Plaintiff was to earn an annual salary of $48,800.00 for the year 2013.

43. Plaintiff's W-2s from 2013 indicate that he was paid $20,098.00 for the 2013 year.

44. Comparison of the I-129 figure to the W-2s yields a difference of $28,702.00 due and owing to Plaintiff from Defendant Archon for the year 2013.

45. But yet again, Defendants would consistently demand that Plaintiff return cash to Defendants when he received these – already reduced – paychecks, totaling $931.40 in 2013, yielding an actual take-home pay of $19,166.60 for 2013, leading to a total of $29,633.40 still due to Plaintiff.

46. Additionally, Defendants unlawfully forced Plaintiff to pay all fees associated with his USCIS application for 2013, totaling more than $3,500.00.

47. The total of all of these withheld wages is presently calculated at $111,009.21.

48. The total of all fees associated with Mr. Saiyed's USCIS applications is presently calculated at over $10,500.00.

49. Defendants were not alone in treating Plaintiff in this manner; the Class has and continues to suffer the same system of treatment.

50. Some members of the Class are or were paid entirely in cash, such as those who were not directly beholden to Defendant Archon for their immigration status, and were never given W-2s nor 1099s.  The hourly rates of these members of the Class fell well below minimum wage.

51. Members of the Class would or are misclassified at times by Defendants as a means of avoiding paying them fairly.  For example, individuals with pHDs or medical degrees would be classified as student interns.

**B.**      **Defendants' Oppressive Control over Plaintiff and Other Employees**

52. Knowing that Plaintiff would become unlawfully present in the United States if Defendants withdrew the H-1B petition, Defendants took advantage of their position over Plaintiff, by not only refusing to pay Plaintiff as described in *supra* Section A, but also by

engaging in systematic mistreatment of Plaintiff and of the Class, as detailed in this and the *infra* sections.

53. Defendants refused to grant Plaintiff any vacation days.

54. Defendants refused to grant Plaintiff any holidays.  For example, Plaintiff was forced to work – under threats of discharge and/or physical harm – on every July 4 that he was employed by Defendant Archon, along with many other national holidays.

55. Defendants refused to grant Plaintiff any sick leave, nor family leave.  Defendants maintained this policy despite being aware that Plaintiff was in treatment for diabetes and blood pressure issues, that moreover was aware of Plaintiff's wife having epilepsy and thyroid disease.

56. Defendants threatened to withdrawal support of Plaintiff's family's H-4 visa status unless Plaintiff and his family performed chores and errands for Defendants, without any compensation whatsoever.

57. Defendants did not provide any health insurance or Workers' Compensation for Plaintiff, nor health insurance for Plaintiff's family.

58. When Plaintiff's father, who lived in India, became ill, Defendant RASHID PATEL initially refused to allow Plaintiff to leave to visit him; he eventually allowed Plaintiff to go, only on the condition that Plaintiff pay Defendant RASHID PATEL $300, knowing through Defendants' own scheme that Plaintiff did not have that much money at the time. By the time Plaintiff had raised the money, his father had died. Once Plaintiff paid Defendant RASHID PATEL the $300 (so that he could be allowed to go bury his father), Defendant RASHID PATEL demanded that Plaintiff bring Patel's family a suitcase full of gifts with him.

59. When Plaintiff was finally allowed return to India to bury his father, Defendants docked Plaintiff's pay, even though Plaintiff had not taken a vacation, sick, or family leave day in more than six years.

60. Defendants made Plaintiff regularly work more than 12 hours a day.

61. Defendants made Plaintiff regularly work seven days a week.

62. Defendants did not allow Plaintiff to use telephones in the office.

63. Defendants did not allow Plaintiff to access the Internet in the office.

64. Defendants did not allow Plaintiff and other members of the Class to speak to one another in the office, and actively interfered with when the Plaintiff and other members of the Class attempted to speak outside of work.

65. Defendants refused to provide adequate heating or cooling at Defendant Archon's offices, leading to additional health problems for Plaintiff.

66. Defendants insisted that Plaintiff work with the lights turned off – in the dark – after normal business hours.

67. Defendant RASHID PATEL would redirect any packages that Plaintiff received, and have them opened and inspected by employees of Defendant Archon.

68. At Rashid Patel's direction, his sister Mehzabin Patel contacted Plaintiff when not at work approximately every two to four hours, for the purpose of ensuring Plaintiff was at home, not communicating with others, and not perusing other employment opportunities.

69. Patel and his family members would come to Plaintiff's home – regularly and unannounced – to inspect for the purposes of ensuring that Plaintiff remained in poverty and had no other source of income.

70. Defendants conspired to prevent Plaintiff from obtaining a car.  When he did finally obtain a car, Defendants would use it for business over Plaintiff's objection.  When

Defendants damaged Plaintiff's car, Plaintiff would not be reimbursed for repairs, despite requests to do so.

71. The purpose and effect of this culmination of activities was to keep Plaintiff and the Class in silence and obedience, for fear of deportation and/or harm towards workers and their families, so that Plaintiff felt he had no choice but to work far more hours for far less pay in unacceptable working and living conditions than can fit within the outer confines of human decency.

## C.   Even After Plaintiff Fled Archon, Defendants Continued Harassing Plaintiff

72. Plaintiff, needing to attend to his family and his own health problems, and unable to tolerate the oppression and harassment imposed on Plaintiff by Defendants, Plaintiff was terminated on or about December 19, 2013.

73. Patel sent his wife, Mariam Patel, to threaten Plaintiff and his family, on or about April 21, 2014, telling them to return to India or commit suicide.  She additionally told them that they were lucky she did not bring a gun with her that day.  Plaintiff, fearing for his life and the lives of his family, lodged a complaint with the Nutley Police Department regarding this incident, Case Number 14-13799A.

74. Because Defendants had not given Plaintiff his final paycheck, Defendant RASHID PATEL and Plaintiff met at the Dar-ul-Islah Mosque, located at 320 Fabry Terrace, a location Patel insisted on.  When Plaintiff arrived, Defendant RASHID PATEL and Defendant RASHID PATEL's father, Rav-Mohammed Patel, attacked Plaintiff. Defendant RASHID PATEL and Rav-Mohammed Patel threatened Plaintiff with injury and murder, and attempted to physically restrain Plaintiff.

75. Thereafter, in or about July, 2014, Defendant served a Complaint upon Plaintiff, alleging that Plaintiff had signed a non-compete agreement in 2011, which Defendants suddenly

were seeking to enforce.  Upon information and belief, the sole purpose of this law suit is

to continue hounding Plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION

76. Plaintiff repeats and realleges the previous allegations as if fully set forth herein at length.

77. Plaintiff brings this cause of action on behalf of himself and the Rule 23 class.

78. Plaintiff is authorized to bring these civil claims against Defendant pursuant to the civil

remedies provision of the Trafficking Victims Protection Reauthorization Act

("TVPRA"), 18 U.S.C.A. § 1595.

79. The "Forced Labor" section of TVPRA, 18 U.S.C.A. § 1589, states in relevant part that:

> (a) Whoever knowingly provides or obtains the labor or services of a person
> by any one of, or by any combination of, the following means--
>> (1) by means of force, threats of force, physical restraint, or threats of
>> physical restraint to that person or another person;
>> (2) by means of serious harm or threats of serious harm to that person or
>> another person;
>> (3) by means of the abuse or threatened abuse of law or legal process; or
>> (4) by means of any scheme, plan, or pattern intended to cause the person
>> to believe that, if that person did not perform such labor or services, that
>> person or another person would suffer serious harm or physical restraint,
> shall be punished as provided under subsection (d).
> …
> (d) Whoever violates this section shall be fined under this title, imprisoned not
> more than 20 years, or both…."

80. Further, 18 U.S.C.A. § 1589(c)(1) defines the term "abuse or threatened abuse of

law or legal process" to include "the use or threatened use of a law or legal

process, whether administrative, civil, or criminal, in any manner or for any

purpose for which the law was not designed, in order to exert pressure on another

person to cause that person to take some action or refrain from taking some

action."

81. Additionally, 18 U.S.C.A. § 1589(c)(2) defines "Serious Harm" as "any harm,

whether physical or nonphysical, including psychological, financial, or

reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."

82. Defendants, through the herein-described pattern of conduct towards Plaintiff, knowingly obtained and benefited from Plaintiff's services, with the intention that Plaintiff believes that if he did not perform such services, Plaintiff and/or Plaintiff's family would suffer Serious Harm.

83. Moreover, Defendants, through the herein-described pattern of conduct towards Plaintiff, knowingly obtained and benefited from Plaintiff's services through abuse of the legal process, by threatening deportation of Plaintiff and/or Plaintiff's family, and by filing spurious theft and other complaints.

84. Defendants knowingly benefited financially from the herein-described pattern of conduct towards Plaintiff; Defendants knew, should have known, or recklessly disregarded that this benefit was in violation of, *inter alia*, TVPRA.

85. Defendants used threats and intimidation to force Plaintiff to remain in its employment, without adequate pay or benefits as required by law.

86. Defendants' knowing and intentional acts constitute a violation of 18 U.S.C.A. § 1589.

87. As a result of Defendants' conduct, Plaintiff suffered injuries in an amount to be determined at trial, believed to exceed $2 million.

88. Pursuant to 18 U.S.C.A. § 1595, Plaintiff is entitled to recover damages and reasonable attorney's fees for Defendants' wrongful conduct.

**AS AND FOR A SECOND CAUSE OF ACTION**

89. Plaintiff repeats and realleges the previous allegations as if fully set forth herein at length.

90. Plaintiff brings this cause of action on behalf of himself and the Rule 23 class.

91. The "Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor" provision of the TVPRA, 18 U.S.C.A. § 1590, states in relevant part that "(a) Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both."

92. Defendants knew or should have known that the pattern of conduct towards Plaintiff constituted a violation of 18 U.S.C.A. § 1590, *inter alia*, by recruiting Plaintiff for a job they intended to not fully compensate him for performing, threatening to have Plaintiff and/or Plaintiff's family deported, threatening Plaintiff, harassing Plaintiff, and perusing improper legal action against Plaintiff.

93. As a result of Defendants' conduct, Plaintiff suffered injuries in an amount to be determined at trial, believed to exceed $2 million.

94. Pursuant to 18 U.S.C.A. § 1595, Plaintiff is entitled to recover damages and reasonable attorney's fees for Defendants' wrongful conduct.

### AS AND FOR A THIRD CAUSE OF ACTION

95. Plaintiff repeats and realleges the previous allegations as if fully set forth herein at length.

96. Plaintiff brings this cause of action on behalf of himself and the Rule 23 class.

97. Defendants knowingly made misrepresentations and material omissions to Plaintiff regarding (a) his immigration status; (b) his payments; (c) his benefits; and (d) his required work hours.

98. The misrepresentations and material omissions by Defendants alleged herein were material and untrue.

99. Defendants made or caused to be made the said misrepresentations and material omissions with knowledge or belief of their falsity, or with reckless disregard for their truth.

100.    Defendants made or caused to be made the material misrepresentation and mission with the intent to induce Plaintiff to rely upon them so he would continue to work at a compensation rate far below the rate required by law.

101.    Had Plaintiff known of the misrepresentations and material omissions made or caused to be made by Defendants, Plaintiff never would have agreed to immigration sponsorship by Defendant Archon, and would never have worked for Defendant Archon.

102.    Defendants' behaviors constitute intentional fraud.

103.    As a result of Defendants' conduct, Plaintiff suffered injuries in an amount to be determined at trial, believed to exceed $2 million.

104.    The foregoing acts and omissions by Defendants constitute oppressive, malicious, and deceptive conduct justifying an award to Plaintiff of punitive and exemplary damages, attorney's fees, and costs.

## AS AND FOR A FOURTH CAUSE OF ACTION

105.    Plaintiff repeats and realleges the previous allegations as if fully set forth herein at length.

106.    Plaintiff brings this cause of action on behalf of himself and the Rule 23 class.

107.    This action also arises under the Fair Labor Standards Act, as amended ("FLSA").

108.    At all relevant times, Defendants have been, and continue to be, "employers" engaged in the interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

109.     At all relevant times, Defendants have employed, and/or continue to employ, "employee[s]," including the Plaintiff and all similarly situated employees.

110.     At all relevant times, Defendant Archon has had gross operating revenues in excess of $500,000.00 and satisfy the threshold test for the "enterprise" requirement under the FLSA.

111.     Defendants employ or employed numerous non-exempt employees at its offices.

112.     The FLSA requires each covered employer, such as Defendant Archon, to compensate all non-exempt employees for services performed and to compensate them at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week.

113.     Defendants willfully failed to remit to Plaintiff and the Class members wages owed to them under FLSA and the agreements between parties, such as for Plaintiff, as presented in the initial I-129, and reiterated in the subsequent applications and letters to the USCIS (hereinafter collectively "USCIS Letters").

114.     Defendants' violations of FLSA were willful, as evidenced by Defendants' recidivism and fraudulent bookkeeping practices designed to deprive Plaintiff and the Class of appropriate overtime and minimum wage payments.

115.     As a result of Defendants' violations of FLSA, Plaintiff and the Class have been injured and are entitled to damages for minimum wage violations and unpaid overtime, liquidated damages and attorneys' fees costs, disbursements and interest thereon.

### AS AND FOR A FIFTH CAUSE OF ACTION

116.     Plaintiff repeats and realleges the previous allegations as if fully set forth herein at length.

117.    Plaintiff brings this cause of action on behalf of himself and the Rule 23 class.

118.    The USCIS Letters, which bind Defendant Archon to employing Plaintiff, are therefore properly treated as Plaintiff's employment contract.

119.    Defendants owe unpaid wages to Plaintiff consisting of the difference between the amount of wages paid to Plaintiff as aforesaid, and the amount of wages properly payable pursuant to the USCIS Letters, presently calculated at $111,009.21, together with interest on the unpaid amounts from the dates on which each portion of the wages were to have been paid pursuant to the USCIS Letters.

120.    Upon information and belief, Defendants' failure to pay the wages was willful.

121.    Plaintiff is entitled to liquidated damages pursuant to New York Labor Law § 198 in the sum of 100% of the total amount of the wages due.

122.    Pursuant to New York Labor Law § 198, Plaintiff is further entitled to reasonable attorney's fees.

## AS AND FOR A SIXTH CAUSE OF ACTION

123.    Plaintiff repeats and realleges the previous allegations as if fully set forth herein at length.

124.    Plaintiff brings this cause of action on behalf of himself and the Rule 23 class.

125.    Plaintiff regularly worked days when the spread-of-hours exceeded ten hours.

126.    Defendants have willfully failed to pay Plaintiff additional compensation of one hour's pay at the minimum wage for each day during which they worked more than ten hours.

127.    Defendants' failure to pay Plaintiff spread-of-hours compensation for each day he worked in excess of ten hours is a willful violation of New York Labor Law § 650 *et seq.*, and 12 NYCRR § 146-1.6.

128.     Due to Defendants' violation of New York State Law, Plaintiff is entitled to recover from defendant an award of damages for his unpaid compensation, liquidated damages, reasonable attorneys' fees and costs; and disbursements of the action, pursuant to the New York Labor Law § 663(1).

## AS AND FOR A SEVENTH CAUSE OF ACTION

129.     Plaintiff repeats and realleges the previous allegations as if fully set forth herein at length.

130.     Plaintiff brings this cause of action on behalf of himself and the Rule 23 class.

131.     New York Labor Law § 195 requires Defendants to provide Plaintiff with accurate wage statements on an annual basis in both English and the Plaintiff's primary language and to preserve those records for a period of six years.

132.     Those statements must include: Plaintiff's rate or rates of pay, including overtime rate of pay; where applicable; how Plaintiff is paid; and any allowances taken as part of the minimum wage.

133.     Defendants failed to furnish accurate statements in compliance with the Wage Theft Prevention Act.

134.     Due to Defendants' violation of New York State Law, Plaintiff and the Class are entitled to recover from Defendants an award of statutory damages in the amount of $50 per employee per week, up to $2,500, plus costs interest and reasonable attorneys' fees.

## AS AND FOR A EIGHTH CAUSE OF ACTION

135.     Plaintiff repeats and realleges the previous allegations as if fully set forth herein at length.

136.     Defendants obtained and received the services of Plaintiff but did not nearly fully compensate Plaintiff for the value of these services.

137.     Defendants' receipt of Plaintiff's services entitles Plaintiff to the quantum meruit of his services, attorney's fees, costs, and any other equitable relief this Court deems appropriate.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demand as follows:

(a)     a ruling certifying the Rule 23 Class;

(b)     as and for his FIRST cause of action against Defendants, declaring that Defendants have violated 18 U.S.C. §1589, 1595 and ordering Defendants to pay Plaintiff and the Rule 23 Class compensatory and punitive damages and attorney's fees;

(c)     as and for his SECOND cause of action against Defendants, declaring that Defendants have violated 18 U.S.C. §1590, 1595 and ordering Defendants to pay Plaintiff and the Rule 23 Class compensatory and punitive damages and attorney's fees;

(d)     as and for his THIRD cause of action against Defendants, declaring that Defendants have committed fraudulent inducement and negligent misrepresentation, ordering Defendants to pay Plaintiff and the Rule 23 Class his actual damages, punitive damages, exemplary damages, and reasonable attorney's fees;

(e)    as and for his FOURTH cause of action against Defendants for unpaid wages under FLSA in an amount not less than $121,509.21, plus interest and penalties as may be provided by law;

(f)    as and for his FIFTH cause of action against Defendants for New York Labor Law violations and breach of Plaintiff's employment contract, for a declaration of the rights and obligations of the parties under the Employment Contract, along with damages not yet to be determined, but believed to be in excess of $121,509.21; plus interest and penalties as may be provided by law;

(g)    as and for his SIXTH against Defendants the full amount of unpaid spread-of-hours wages as well as an equal amount as liquidated damages pursuant to New York Labor Law 663(1);

(h)    as and for his SEVENTH against Defendants an award to Plaintiff and the Rule 23 Class for statutory damages for Defendants' violations of the Wage Theft Prevention Act;;

(i)    as and for his EIGHTH cause of action against Defendants, awarding Plaintiff and the Rule 23 Class quantum meruit of his services to Defendants;

TOGETHER with such other or further relief, including an award of costs, disbursements and reasonable attorney's fees, and such other and further relief as this court deems just and proper.

Dated: Mineola, New York
       November 21, 2014

Michael J. Romano
ROMANO & ASSOCIATES
*Attorneys for Plaintiff*

220 Old Country Road
Mineola, New York 11501
(516) 248-8880

To:
ARCHON, INC.
159 Cathedral Avenue
Hempstead, NY 11550

ARCHON DISTRIBUTION, INC.
361 Franklin Ave,
Nutley, NJ 07110

RASHID PATEL
316 Ropes Road
Englewood Cliffs, New Jersey

MOHAMMED ASHIF "MIKE" GAJRA
a/k/a Mohamed Ashif Patel
159 Cathedral Avenue
Hempstead, NY 11550

## VERIFICATION

STATE OF NEW YORK )
                    ) SS.:
COUNTY OF NEW YORK )

      I, **AMJAD SAIYED**, being duly sworn, depose and say: I am the Plaintiff in the within action; I have read the foregoing **VERIFIED COMPLAINT** and know the contents thereof; and the same is true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and to those matters, I believe it to be true.

                                _____
                                **AMJAD SAIYED**

Sworn to before me this
21st day of November, 2014

_____
Notary Public



DANIEL ORTIZ
Comm. Exp. 11/04/2017
NOTARY
PUBLIC
Comm. No. 01OR6239616
NEW YORK COUNTY, STATE OF NEW YORK